UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENDRICK E. DULDULAO,

    Plaintiff,

v.    CASE NO.: 8:11-cv-1413-T-23TBM

LA CREPERIA CAFÉ, INC., a Florida Corporation,

    Defendant.
_____/

## **ORDER**

The plaintiff sues (Doc. 1) for discrimination under Title III of the Americans with Disabilities Act, ("ADA") 42 U.S.C. § 12181, *et seq*. The defendant (1) moves (Doc. 5) under Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss for failure to state a claim, (2) moves (Doc. 5) under Rule 12(e) for a more definite statement, and (3) moves (Doc. 14) under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction.

## Discussion

The plaintiff, Kendrick E. Duldulao, uses a "wheelchair for mobility." (Doc. 1, ¶ 3) The defendant, La Creperia Café, is a small Ybor City bistro and

espresso bar. In just over two years, the plaintiff has sued for discrimination sixty-eight local businesses, including restaurants, hotels, retailers, and gentlemen's clubs.[1]

The complaint alleges twelve violations of the ADA Accessibility Guidelines, 28 C.F.R. Part 36:

> (i) Failure to provide securely attached mat at the entrance of the Subject Facility, in violation of 28 C.F.R. Part 36, Section 4.5.3.
>
> (ii) The service counter, and stools, in the Subject Facility is higher than 34 inches above the finish floor in violation of the requirements of 28 C.F.R. Part 36, Section 5.2. which requires a maximum height of the counter, or a 60 inch wide section of it, to be 34 inches maximum height.
>
> (iii) Failure to provide accessible door hardware in the restroom that can be opened with a closed fist in violation of 28 C.F.R. Part 36. Section 4.23.9.
>
> (iv) Failure to completely and properly insulate exposed hot water and abrasive drain pipes under restroom lavatories to prevent burns and scrapes as required by 28 C.F.R. Part 36, Section 4.19.4.
>
> (v) Failure to provide the required underside clearance under restroom lavatory for accessibility due to garbage can blocking access to said underside of lavatory, in violation of 28 C.F.R. Part 36.
>
> (vi) Failure to provide accessible restroom toilet flushing controls in violation of 28 C.F.R. Part 36.
>
> (vii) Failure to install an accessible restroom mirror in compliance with 28 C.F.R. Part 36, Section 4.19.6.

---

[1] Rule 201(f), Federal Rules of Evidence, permits judicial notice "at any stage of the proceeding," including a motion to dismiss. Rules 201(b) and (c) combine to permit judicial notice of the docket and the record of another lawsuit. *Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53-54 (11th Cir. 2006); *Griffin v. McNeil*, No. 3:10-cv-545, 2011 WL 5520050, at *3 n.4 (N.D. Fla. Oct. 11, 2011); *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs.*, No. 3:10-cv-423, 2011 WL 4529604, at *5 n.7 (M.D. Fla. Sept. 30, 2011) (Howard, J.) (citing cases).

> (viii) Failure to provide a restroom paper towel dispenser at an accessible height as required by 28 C.F.R. Part 36, Section 4.22.7.
>
> (ix) Failure to provide a restroom toilet paper dispenser at an accessible height as required by 28 C.F.R. Part 36, Section 4.22.7.
>
> (x) Failure to provide a coat hook on restroom stall door at an accessible height in compliance with the requirements of 28 C.F.R. Part 36, Section 4.1.3(12), and Section 4.25.3.
>
> (xi) Failure to provide adequate directional and accurate informational signage throughout the Subject Facility as required by 28 C.F.R. Part 36, Section 4.1.3(16).
>
> (xii) Failure to provide signage addressing people with disabilities telling them that accessible services are provided as required by 28 C.F.R. Part 36, Section 4.30.4.

(Doc. 1, ¶ 15) On August 2, 2011, the defendant moved (Doc. 5) to dismiss and argued that the plaintiff's complaint, general enough for use against many defendants, fails to state a claim sufficient to permit a responsive pleading.

On September 13, 2011, the defendant's counsel sent a letter (Doc. 14-1) – labeled as a Rule 68, Federal Rules of Civil Procedure, offer of judgment – to the plaintiff's counsel. The letter states that upon review of the café, only one of the alleged violations, the mirror height, "arguably has any merit." The letter lists each alleged violation and details – in the defendant's counsel's opinion – how each allegation is either "inaccurate" or "unclear." Nonetheless, the defendant offers to modify certain fixtures, agrees to consent to an injunction (and "reasonable" or court-ordered attorney fees), and invites the plaintiff to inspect the café both to ensure compliance and to discover any other violation. The defendant offers to include

newly discovered violations in the proposed injunction if the plaintiff "can show any authority whatsoever that there is any remotely plausible argument that other items . . . are not ADA compliant." Finally, the defendant concludes:

> Please also consider this letter to be a complete capitulation to your demands to the extent that we understand them (now or after your above reinspection of the restaurant premises). If our offer to fix any item within the restaurant premises is not specific enough, then please advise of why you feel this is the case and we will be more specific.

(Doc. 14-1)

On September 27, 2011, the plaintiff's counsel responded (Doc. 14-2) to the letter, "[i]n short, your proposed modifications to the subject facility, or lack thereof, are certainly not in full compliance with the ADA, not supported by your Expert, and are not agreed to by the Plaintiff." The response claims that because the plaintiff "pled *inter alia*" – i.e., pleaded that other violations, undiscovered and unspecified in the complaint, might exist – the plaintiff is entitled to a Rule 34, Federal Rules of Civil Procedure, expert inspection. Unsurprisingly concluding with attorney fees,[2] the

---

[2] "Serial plaintiffs" or "testers," such as the plaintiff, have caused a groundswell of ADA Title III litigation in the Middle District of Florida and across the country. *See Rodriguez v. Investco, LLC*, 305 F. Supp. 2d 1278, 1281 (M.D. Fla. 2004) (Presnell, J.). Although Congress limited Title III's remedy to injunctive relief, the attorney fee provision, 42 U.S.C. § 12205, provides an incentive for private litigation:

> Why would an individual like [the plaintiff] be in such a rush to file suit when only injunctive relief is available? Wouldn't conciliation and voluntary compliance be a more rational solution? Of course it would, but pre-suit settlements do not vest [the plaintiffs'] counsel with an entitlement to attorney's fees. Moreover, if a plaintiff forebears and attempts pre-litigation resolution, someone else may come along and sue first. The current ADA lawsuit binge is, therefore, essentially driven by economics – that is, the economics of attorney's fees.

(continued...)

plaintiff's counsel states, "In addition, the attorneys fees, expenses and costs are also not sufficiently addressed in the flawed '3rd' Offer Of Judgment, in addition to unreasonable assertions, coupled with unspecified term of 'reasonableness', in the flawed '3rd' Rule 68 Offer." Arguing that the offer of judgment moots the "case or controversy" and therefore extinguishes subject matter jurisdiction, the defendant on September 29, 2011, moved (Doc. 14) again to dismiss.

*The First Motion to Dismiss*

A plaintiff must state sufficient facts, assumed true, to "'state a claim to relief that is plausible on its face,'" *i.e.*, a claim that creates a reasonable inference of the defendant's liability and fairly notifies the defendant of both the claim and "the grounds upon which it rests." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 1961 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A complaint alleging facts "'merely consistent with'" a defendant's liability "'stops short of the line between possibility and plausibility of 'entitlement to relief'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). On a motion to dismiss, inquiry is limited

---

[2] (...continued)
*Rodriguez*, 305 F. Supp. 2d at 1281 (citation omitted); *see also Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004) (Conway, C.J.) ("[T]he means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals). . . . This is particularly the case in the Middle District of Florida where the same plaintiffs file hundreds of lawsuits against establishments they purportedly visit regularly. This type of shotgun litigation undermines both the spirit and purpose of the ADA."). Because of the severe expense of protracted litigation, an ADA defendant – in the Tampa Bay area, usually a small business – settles the action before answering the complaint, agrees to minor modifications, and pays a substantial attorney fee.

to well-pleaded facts in the complaint, documents attached to the compliant, and matters of judicial notice. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). An ADA Title III discrimination claim requires (1) an individual with a disability, (2) a place of public accommodation, and (3) a denial, on the basis of the disability, of full and equal enjoyment of the premises. *Raetano v. Sardo's Pizza, Inc.*, No. 8:09-cv-1569, 2010 WL 326167, at *1 (M.D. Fla. Jan. 21, 2010) (citing *Schiavo v. Schiavo*, 358 F. Supp. 2d 1161, 1165 (M.D. Fla. 2005)).

The vague and cursory complaint, an obvious cut-and-paste job, neither creates a reasonable inference of liability nor provides fair notice of the claim. First, the plaintiff fails to sufficiently plead a disability, alleging only that the plaintiff "use[s] a wheelchair for mobility." A wheelchair accommodates a variety of disabilities, ranging from an ephemeral ankle, knee, or hip injury to permanent paralysis. Although the allegation possibly permits an inference of a disability, the immediate inference fails to support another crucial inference – that the disability was the source of the denial of "full and equal enjoyment." Stated differently, without knowledge of the specific disability, discrimination on the basis of a disability is impossible to infer. For example, the plaintiff alleges a "[f]ailure to provide accessible door hardware in the restroom that can be opened with a closed fist." (Doc. 1, ¶ 15(iii)) If the plaintiff lacks functional use of his hands, the defendant discriminates "based on the disability;" if the plaintiff has full use of his hands, neither a denial of full and equal enjoyment nor a discrimination "based on the disability" occurs.

Second, the listed violations, an attempt to plead "a denial of full and equal enjoyment," lack specifics. For example, the complaint alleges a "[f]ailure to provide adequate directional and accurate informational signage." (Doc. 1, ¶ 15(xi)) However, the complaint fails to specify the inadequacy – perhaps a lack of braille lettering? An insufficient color contrast between the characters and the background? An incorrect character height? An improper height off the floor? Or some other unspecified problem? *See* Accessibility Guidelines §§ 4.30.3, 4.30.4, 40.30.5, 4.30.6.

Next, in two places, the complaint alleges a violation of the Accessibility Guidelines in gross. The complaint alleges a "[f]ailure to provide accessible restroom toilet flushing controls" (Doc. 1, ¶ 15(vi)) and a "[f]ailure to provide the required underside clearance under restroom lavatory for accessibility due to garbage can blocking access to said underside of lavatory." (Doc. 1, ¶ 15(v)) Each allegation, quoted in entirety, cites comprehensively (but without differentiation) the entire Accessibility Guidelines – Part 36, a massive Part located within Volume 28 of the Code of Federal Regulations.

Finally, in other places, the alleged facts do not violate the cited section of the Accessibility Guidelines. For example, the allegation (Doc. 1, ¶ 15(iii)) of a failure to provide door hardware points the reader to Section 4.23.9 of the Accessibility Guidelines – a medicine cabinet section, silent on door hardware. Also, the complaint alleges (Doc. 1, ¶ 15(ii)) that the service counter is "higher than 34 inches above the finish floor." Although the most specific violation in the complaint, the

- 7 -

allegation fails because Section 5.2 requires a counter height of thirty-four inches only if no service is available "at accessible tables within the area."

Presumably the result of hastily filing four other lawsuits in the Middle District of Florida by the same defendant on the same day,[3] the plaintiff's counsel presents a complaint that except for the name and address of the facility could apply equally to any restaurant with a counter and a bathroom (at least if one, as here, accepts the allegations as true). Absolutely no allegation is tailored to La Creperia Café. The vague allegations render impossible an inference that the defendant discriminates against a disability – especially not a disability that remains unnamed and unknown. The cookie-cutter allegations of discrimination; the failure to state a disability; the omission of the date of each visit; and the history of recent litigation[4] combine to permit no "reasonable inference" of a Title III claim (and no reasonable inference that the plaintiff visited the facility).

---

[3] *See Myers v. Alessi Bakery Café, Inc.*, 8:11-cv-1403; *Duldulao v. Emperors Tampa, Inc.*, 8:11-cv-1410; *Duldulao v. La Cabana Antioquena, Inc.*, 8:11-cv-1411; *Duldulao v. Sunshine Restaurant Merger Subsidiary, LLC*, 8:11-cv-1412.

[4] The plaintiff's serial litigation raises other questions. Article III standing requires an ADA plaintiff to allege an imminent return to the subject facility once the modifications occur. *Shotz v. Cates*, 256 F.3d 1077, 1081-82 (11th Cir. 2001). Presumably, the plaintiff – in each of the sixty-seven complaints, like in this one – alleges an "immediate" return to the facility. How does a plaintiff's litigation history impact the plausibility of the allegation? In other words, if a plaintiff – in two year's time – alleges an immediate return to 68 local establishments, is the allegation plausible? What about 150 establishments? 300? 700?

*The Second Motion to Dismiss*

Citing *Mackenzie v. Kindred Hospitals East, LLC*, 276 F. Supp. 2d 1211 (M.D. Fla. 2003), the defendant argues that the Rule 68 offer of judgment extinguishes the "case-or-controversy," renders the case moot, and extinguishes subject matter jurisdiction. Suing under the Fair Labor Standards Act, the *Mackenzie* plaintiff alleged that the defendant failed to pay one and one-half times the regular hourly wage for overtime work. 276 F. Supp 2d at 1215. The defendant served the plaintiff with an offer of judgment for $1,200, plus costs and a reasonable attorney fee, an amount in which both parties agreed exceeded the amount the plaintiff could recover by prevailing at trial. *Mackenzie*, 276 F. Supp 2d at 1215. Because the "case would unquestionably be moot if the plaintiff had accepted the offer of full relief," the fully compensatory offer of judgment extinguished subject matter jurisdiction. *Mackenzie*, 276 F. Supp. 2d at 1218-19. Thus, *Mackenzie* holds that an undisputedly fully compensatory offer of judgment ends the live controversy and moots the case. *Mackenzie*, 276 F. Supp. 2d at 1218-19.

This action is distinguishable from *Mackenzie*, which involved money damages and provided an easy determination of whether the offer of judgment was "more favorable." Here, the plaintiff seeks an injunction, which requires a detailed and unconventional analysis of whether the offer is "more favorable" than the final judgment. MOORE'S FEDERAL PRACTICE § 68.07[3] (3d ed. 2010) ("[N]o sharply articulated approach has emerged in the cases to date and it seems fair to say that

judges deal with these problems on a case-by-case basis."); *see also Reiter v. MTA N.Y. City Transit Authority*, 457 F.3d 224, 233 (2d Cir. 2006) (lamenting "the current formulation of Rule 68" and asking the Rules Committees to "address the question of how an offer and judgment should be compared when non-pecuniary relief is involved").

As the defendant argues, the complaint fails for lack of specificity. The unsatisfactory complaint renders impossible an accurate determination of the requested relief. Without specific requested relief, a fully compensable offer of judgment is unavailable. Therefore, no comparison between some unknown relief and an offer of judgment intended to fully compensate the unknown relief is achievable. The plaintiff must first clarify the allegations. Ironically, the unsatisfactory complaint prevents dismissal of the action.

## Conclusion

The defendant's motion to dismiss under Rule 12(b)(6) (Doc. 5) is **GRANTED**. The defendant's motion to dismiss (Doc. 14) for lack of subject matter jurisdiction is **DENIED WITHOUT PREJUDICE**. *See Harrell & Sumner Contracting Co.* v. *Peabody Petersen Co.*, 546 F.2d 1227, 1229 (5th Cir. 1977) ("[U]nder Rule 12(h)(3) . . . , the defense of lack of subject matter jurisdiction may be raised at any time by motion of a party or otherwise."). The complaint is **DISMISSED WITHOUT PREJUDICE**. The plaintiff shall amend the complaint on or before

**JANUARY 12, 2012**. **Absent an extraordinary circumstance, no extension of time will be granted.**

ORDERED in Tampa, Florida, on December 29, 2011.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE