# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

KENDRICK E. DULDULAO,

        Plaintiff,

                                     CASE NO. 8:11-cv-01413-SDM-TBM

v.

LA CREPERIA CAFÉ, INC., a Florida
corporation, d/b/a LA CREPERIA CAFE

        Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS, ALTERNATIVE
## MOTION FOR MORE DEFINITE STATEMENT, ALTERNATIVE
## MOTION TO DISMISS THE CASE AS MOOT AND INCORPORATED
## MEMORANDUM OF LAW

Defendant, LA CREPERIA CAFÉ, INC., a Florida corporation d/b/a LA CREPERIA CAFE ("La Creperia"), by and through the undersigned counsel and pursuant to Rule 12(b), (e) and (h)(3) of the Federal Rules of Civil Procedure, hereby moves to dismiss the Amended Complaint filed by Plaintiff, KENDRICK E. DULDULAO, M.D. ("Plaintiff" or "Dr. Duldulao"); or, in the alternative, moves for a more definite statement before La Creperia is required to interpose a responsive pleading; or, in the alternative, moves for a dismissal of the case with prejudice as moot. In support of its Motion, La Creperia states as follows:

      1.      Plaintiff filed a one-count Complaint on June 24, 2011 alleging twelve violations of 42 U.S.C. §12181, *et. seq.* (the "Americans with Disabilities Act" or "ADA").

      2.      This Court dismissed the Complaint on December 29, 2011 [Doc. #21], under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The

Court held that the majority, if not all of Plaintiff's claims, appeared to conflict with the ADA standards, lacked any real degree of specificity as to the alleged ADA non-compliance, and/or the cited examples of ADA non-compliance did not appear to correlate with Dr. Duldulao's unspecified disability. Further, the Court noted there was no indication Dr. Duldulao would have a reasonable expectation or definitive plans to return to La Creperia, and accordingly, Dr. Duldulao appeared to lack standing.

3.　　As noted by the Court's December 29, 2011 Order, Plaintiff is a serial litigant, who has filed sixty-eight separate complaints alleging violations of the ADA in the Middle District of Florida and three complaints in the Southern District of Florida since November 30, 2009.[1]

4.　　Plaintiff's counsel, Bradley Weitz, files hundreds of ADA claims in New York and Florida each year on behalf of his clients Dr. Duldulao, Stephen Karakis, Dorian Kallen, Zoltan Hirsch, Martin Rapport, Harvey Goodman, Eileen Hasday and other ADA plaintiffs. The docket reports for Dr. Duldulao, Messrs. Karakis, Kallen, Hirsch, Rapport, Goodman and Ms. Hasday are attached hereto as **Composite Exhibit A**.[2] Mr. Weitz is well-known for stretching the boundaries of ADA claims far beyond the ADA's purpose of remedying material and real access problems faced by disabled individuals by, for example, asserting that his client Mr. Hirsch, a Hasidic Jew without legs, was discriminated against by the architectural barriers existing in a non-kosher crab

---

[1]  Plaintiff has filed extensive litigation throughout Florida against restaurants, bars, gentleman's clubs, hotels, shopping malls and other local/small businesses. At least one other court has also pointed out the fact that Dr. Duldulao is a serial plaintiff. *Duldulao v. Ybor Iguana Management, Inc.*, 2011 WL 3359751 (M.D. Fla.).

[2]  Defendant is submitting these docket reports in an effort to show that many of the "deficiencies" in the pleadings submitted by Plaintiff and his legal counsel are intentional and play into a strategy of obscuring the true nature of the claims. Further, the pervasive pattern of litigation against establishments throughout the Tampa Bay area undermines Dr. Duldulao's claim that he intends to return to La Creperia, a necessary element to demonstrate standing.

restaurant and a pedicure salon.  See **<u>Exhibit B</u>**.

5.      The cases filed by Mr. Weitz on behalf of Dr. Duldulao and these other ADA claimants recite ADA violations that are cookie cutter in nature, essentially the same in each and every complaint with respect to like-kind restaurant facility categories (*i.e.,* certain of these other complaints allege problems with parking facilities or stairs, which do not exist in La Creperia's case).

6.      The complaints against restaurant defendants are drafted in a general manner, such that the same complaint will operate as a standard complaint for all restaurant businesses.  While this "one size fits all" approach makes filing suit against multiple businesses easier, it makes it significantly more difficult for La Creperia to determine the nature and extent of Plaintiff's alleged ADA violations.

7.      Despite Mr. Weitz's extensive experience in litigating ADA matters, the allegations of ADA non-compliance in these complaints, including the Complaint [Doc. #1] and Amended Complaint [Doc. #22], predominantly raise claims of ADA non-compliance that are inconsistent with established ADA precedent.  Specifically, Plaintiff alleges claims based upon: (a) a moveable garbage can that someone had temporarily moved under the restroom sink; (b) bar counters that were allegedly too high when table service was clearly available; or (c) non-slip door mats that are not permanently fastened to the floor.  Moreover, Mr. Weitz routinely alleges claims have no bearing on the particular disabilities of the plaintiffs involved (*e.g.*, claims that handles in restroom facilities required too much twisting, that televisions needed closed captioning or ADA signage lacked braille or raised lettering, all in the context of plaintiffs confined to wheelchairs), or are so vague as to give no real guidance as to what the problem might be

(*e.g.*, claims that the toilet flushing mechanism violated the ADA Accessibility Guidelines in gross or that the premises' signage was generally ADA non-compliant).

8.     It is hard not to conclude that the pattern of vague, generally inaccurate and/or inapplicable assertions of ADA non-compliance by Plaintiff's counsel are a result of a deliberate plan to obfuscate the ADA claims so that determining and remedying any actual violations either never occurs (and instead attorneys' fees are quietly paid in settlement by defendants to extricate themselves from the proceedings) or occurs only after protracted litigation when Plaintiff's counsel has generated a small fortune in legal fees.[3]

9.     Plaintiff's counsel repeatedly threatens in complaints and other communications (such as his response to La Creperia's Rule 68 offer of settlement) to raise additional ADA claims when litigating against these facilities through a "Rule 34 examination" of the premises.  The Eleventh Circuit has unequivocally stated that the Plaintiff is not entitled to add additional ADA violation claims discovered in any subsequent inspection of the property.

10.    Plaintiff's counsel is well known for his "Rambo-like" and unorthodox litigation tactics, making a defense particularly time consuming and expensive.[4]

---

[3]  One defense counsel has noted in seeking to have Mr. Weitz and his client Stephen Karakis declared as vexatious litigants that it did not appear that despite the hundreds of cases filed by Mr. Weitz, any had ever been litigated on the merits.  *Karakis v. Hallendale Lanes Management, Inc.*, Case No. 09-cv-61192, Document #11 (S.D. Fla.).

[4]  See for example, *Duldulao v. Ybor Iguana Management, Inc.*, 2011 WL 3359751 (M.D. Fla.) (in which court noted that Mr. Weitz is well known for habitually filing motions for extensions of time even where he previously indicates to the court that his request for an extension is a "final" request); *Karakis v. Forever Jens Inc.*, 2009 WL 113456 (S.D. Fla.) (in which court noted Mr. Weitz's history of unilaterally setting depositions without conferring with opposing counsel and setting motions for sanctions without consulting with opposing counsel as required by local rule);  *Duldulao v. Sunshine Restaurant Merger Sub, Inc.*, 2011 WL 6055954, fn. 2 (M.D. Fla.) (in which court mentions expert witness challenge by the defendant related to Mr. Weitz's utilization of an attorney who was a member of Mr. Weitz's law firm as Dr. Duldulao's expert witness); *Hasday v. Brinker Florida, Inc.*, Case No. 1:04-cv-20737-DLG (in which Mr. Weitz's

11.    Plaintiff's counsel has been able to recover sizeable attorney's and costs awards in these ADA cases, often without the need to invest much time or effort in the proceedings.[5]

12.    As demonstrated in La Creperia's Rule 68 Motion to Dismiss [Doc. #14], La Creperia has from the outset of this litigation continuously and repeatedly attempted to quickly ascertain and resolve any perceived ADA violations complained about by Plaintiff, as well as settle this litigation.    As demonstrated by the Rule 68 Motion to Dismiss, these attempts by La Creperia were summarily rebuffed by Plaintiff as premature.

13.    Most recently, La Creperia informed Plaintiff's counsel through the correspondence dated January 10, 2012 attached hereto as **Exhibit C** (the "<u>Mootness Correspondence</u>"), which attached detailed photographs demonstrating that the alleged ADA violations at the restaurant premises were unquestionably inaccurate, had been fixed or had been removed.[6]    In this and prior instances, including the prior Rule 68

<hr>

client continued to pursue ADA claims, including claims for injunctive relief, against restaurant long after becoming aware that restaurant had permanently closed for business); and *Duldulao v. 5 Star Dining, Inc.*, 2011 WL 32427 (M.D. Fla.), in which the court noted that Dr. Duldulao claimed in his Complaint that he was unable to enter a restaurant facility yet further complained about multiple ADA violations in the restaurant's restroom, and in a separate ruling, the court characterized Mr. Weitz's deposition behavior at Dr. Duldulao's deposition as providing "unnecessary soliloquies and diatribes at every turn," behavior that the court characterized as "unacceptable and intolerable."  Case No. 8:10-cv-2227-T-33MAP, Docket #30 (S.D. Fla.).    In the instant case, La Creperia was served with Plaintiff's extensive First Set of Interrogatories and First Request for Production of Documents by Plaintiff's counsel with the Complaint in violation of Fed. R. Civ. P. 33, necessitating the drafting of and threat of filing of a Motion to Quash Premature Discovery, the form of which was conveniently borrowed from the court filings in *Duldulao v. Jacksons Bistro and Bar, L.C.*, Case No. 8:09-cv-2437-T23 (M.D. Fla.), in which Plaintiff's legal counsel had done the exact same thing one year prior.  Upon receipt of the Motion to Quash Premature Discovery, Plaintiff's counsel withdrew such discovery requests.

[5]  If there is any doubt concerning the lucrative nature of these attorneys' fees and costs awards, in *Karakis v. Argentinian Grill, LLC*, 2010 WL 298599 (S.D. Fla.), the court reduced Mr. Weitz's requests for attorneys' fees and costs to an award $12,507.50, and in *Goodman v. Sperduti Enterprises, Inc.*, Case No. 08-62096-civ-Cohn/Seltzer (S.D. Fla.); the court awarded Mr. Weitz's client $17,711.25; **despite the fact that in both such cases a default judgment was entered in Mr. Weitz's clients' favor.**

offers, Defendant's counsel informed Plaintiff's counsel that all alleged items of non-compliance were inaccurate or had been remedied and invited Plaintiff and his counsel to visit the restaurant premises to verify ADA compliance, but Plaintiff and his counsel were not interested and declined.

14.  Nevertheless, Plaintiff's counsel filed the Amended Complaint two days after his receipt of the Mootness Correspondence, again seeking injunctive relief to prevent these same alleged ADA violations which Plaintiff's counsel knew had never been and/or were no longer in existence.

15.  In the Amended Complaint, Plaintiff removed two of the twelve (12) original allegations of ADA non-compliance relating to architectural barriers within the restaurant premises that clearly bore no relation to Plaintiff's disability.  Specifically, Plaintiff has abandoned his claim that the restroom door hardware required a twisting motion in violation of the ADA, and that the ADA signage was not also in braille and/or failed to contain raised lettering.

16.  The remaining ten (10) allegations of ADA violations set forth in the Amended Complaint mirror those in the original Complaint, but in some instances are more specific about the provisions of the ADA Accessibility Guidelines which Plaintiff claims are in conflict with La Creperia's restaurant facility.

17.  Again, Plaintiff is unable to allege the precise date on which he visited La Creperia's restaurant, and instead asserts that the visit might have been in April of 2011.

18.  The Amended Complaint continues to assert many alleged ADA violations (such as the door mat, the restroom sink configuration and bar height) that are

---

[6] The Mootness Correspondence was also sent by email to Plaintiff's counsel on the afternoon of January 10th in which the JPG photograph files were labeled to specifically describe each item depicted in the photograph.

not, in fact, violations of any section of the ADA. For example, the Amended Complaint now states that the service counter/bar height violates 2004 ADAAG, Chapter 9, Section 902.3, but fails to reflect the fact that ample, lower table seating is available for disabled patrons of the restaurant. Further, 2004 ADAAG, Chapter 9, Section 902.3 is by its terms applicable to new construction or renovated facilities occurring on and after March 15, 2012 and thus does not currently govern La Creperia's facility. The Amended Complaint continues to raise these claims despite the Court previously pointing out that these are not ADA violations.

19.     Although the Amended Complaint is more specific in regards to reciting provisions of the ADA Compliance Manual, many of the details concerning alleged non-compliance with the ADA are not specific enough to allow La Creperia to properly and intelligently respond to the allegations.

20.     The Amended Complaint does recite to a *de minimus* non-compliance with the ADA Compliance Manual; specifically, the location of the toilet flush handle. The handle has since been reoriented to the proper side of the toilet as evidenced by the affidavit of La Creperia's owner, Konstantinos V. Chilias, attached hereto as **Exhibit D** (the "Chilias Affidavit").[7] Even if the toilet flush handle remained on the improper side of the toilet, Plaintiff has not alleged how his particular disability prevented him from using the toilet's flush mechanism as initially installed.

21.     Finally, despite being required by this Court to do so, Plaintiff has failed to plead any evidence that Plaintiff, as a serial litigant, has any intention or concrete plan to return to La Creperia.

---

[7] The testimony or Mr. Chilias, as an owner of the restaurant establishment, concerning ADA compliance and the remediation of all ADA alleged violations is admissible on these issues as confirmed in *Norkunas v. Seahorse NB, LLC*, 2011 WL 5041705 (C.A.11 Fla.).

22.    Based upon the Amended Complaint, it is clear that he never visited the restaurant prior to his visit that might have taken place in April of 2011 and has never returned since. The *de minimus* nature of Plaintiff's remaining alleged ADA violations set forth in the Amended Complaint (*e.g.*, lack of ADA signage in a situation where Plaintiff already knows where the bathroom is in the restaurant, lack of an accessible coat hook, and mirror placed too high, among other minor grievances), all of which, except the toilet handle allegation, are factually inaccurate as demonstrated by the Mootness Correspondence, makes it clear that there never were any real barriers to Plaintiff's entering into and dining within the restaurant. Accordingly, Plaintiff lacks standing to allege violations of the ADA.

WHEREFORE, La Creperia respectfully requests that this Court: (a) enter an order granting La Creperia's Motion to Dismiss without Prejudice based upon Plaintiff's failure to properly allege any ADA violations, (b) in the alternative, enter an order requiring Plaintiff to file a more definite statement with regard to the alleged violations of the ADA such that La Creperia can properly respond to said allegations, (c) in the alternative, enter an order dismissing the Amended Complaint with Prejudice based upon Plaintiff's failure to allege standing, (d) enter an order dismissing the Amended Complaint with Prejudice based upon the fact that the case is now moot, (e) award Defendant its reasonable fees and costs incurred in this matter, and/or (f) grant any further and additional relief that the Court deems just and appropriate.

## MEMORANDUM OF LAW

Plaintiff's Amended Complaint should be dismissed because: (1) even if Plaintiff properly alleged any ADA violations, La Creperia has remediated these *de minimus*

violations, and provided Plaintiff with photographic proof thereof prior to Plaintiff filing the Amended Complaint; (2) Plaintiff's alleged violations of the ADA are not, in fact, violations; (3) Plaintiff again failed to specifically allege ADA claims such that La Creperia can intelligently respond; and (4) Plaintiff lacks standing to sue because Plaintiff is not likely to return to La Creperia.

## I.    Motion to Dismiss Standard

The purpose of Rule 12(b)(6) which provides for the dismissal of a complaint for failure to state claim upon which relief can be granted is to allow courts to eliminate actions that are fatally flawed in their legal premises and are destined to fail, and thus spare litigants the burden of unnecessary pretrial and trial activity. *Advanced Cardiovascular Systems, Inc. vs. Scimed Life Systems, Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). Rule 12(b)(6) is designed to test the facial sufficiency of the statement of claim for relief. *Vernon v. Medical Management Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1553 (S.D. Fla. 1996). However in doing so, the court should construe the complaint in a light most favorable to the plaintiff and factual allegations in the plaintiff's complaint must be taken as true. *Id.*

## II.    Motion for More Definite Statement Standard

Motions for more definitive statements under Rule 12(e) should be granted where the pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading. *Royal Shell Vacations, Inc. v. Scheyndel*, 233 F.R.D. 629, 630 (Dist. Ct. M.D. Fla. 2005). Pleadings which are so vague and ambiguous that the adverse party cannot determine what their true nature is, are subject to a motion for a more definite statement. *American Sheet Metal, Inc. v. Em-Kay Engineering Company, Inc.*,

478 F. Supp. 809, 815 (E.D. Cal. 1979).  If a complaint contains viable legal theory but is so vague and ambiguous that the opposing party cannot respond, either because it is conclusory, inarticulate or for other reasons, the appropriate remedy is a motion for a more definitive statement.  *Jones v. Metropolitan Denver Sewage Disposal District No. 1*, 537 F. Supp. 966, 969 (D. Col. 1982).  *See also, Ohio-Sealy Mattress Manufacturing Co. v. Duncan*, 90 F.R.D. 21, 24 (N.D. Ill. 1980) (defendant was entitled to a more definite statement of allegations made against him in complaint where complaint was "woefully deficient" in providing defendant with notice of his alleged wrongful conduct).

## III.    Plaintiff's Claims are Moot

This is by no stretch of the imagination an ADA lawsuit filed in an effort to correct actual and material ADA violations.  None of the various alleged barriers to Dr. Duldulao's access to and enjoyment of the restaurant facilities, even if taken at face value, amount to any significant interference to such access and enjoyment.  Instead, the attempt to generate and collect substantial attorneys' fees has been the exclusive motivation for the continuance of this lawsuit by Plaintiff.  This is demonstrated by the fact that Plaintiff filed his Amended Complaint despite previously receiving photographic proof that any alleged ADA violations did not exist or had already been remedied.  Courts have recently decided to put a stop to this type of behavior.

### A.    Other Courts have Awarded Sanctions in Similar Situations

This case bears a striking resemblance to the situation in *Kallen v. J.R. Eight, Inc.*, 775 F.Supp.2d 1374 (S.D. Fla. 2011), and not just because the plaintiff in that case, Dorian Kallen, is typically Mr. Weitz's client.  In *Kallen*, a restaurant was sued using many or most of the same ADA violations alleged in the instant case.  Just like La

Creperia's case, the court found that the plaintiff's allegations were not specific enough and dismissed the initial complaint, with the right to amend. Prior to plaintiff filing an amended complaint, the restaurant repaired any alleged violations. The restaurant sent plaintiff photographic proof that the modifications had been made. Despite receiving the correspondence and photos, the plaintiff filed an amended complaint alleging the same violations.

Similarly, Dr. Duldulao has filed an Amended Complaint alleging a variety of ADA problems which were unquestionably fixed prior to the filing of the Amended Complaint, as demonstrated by the Mootness Correspondence. In *Kallen*, not only was the plaintiff denied his attorneys' fees and costs, but the court determined that the plaintiff's conduct, including deliberately filing the complaint seeking injunctive relief knowing that the items had been remedied, warranted sanctions against the plaintiff for the defendant's attorneys' fees and costs. *Kallen*, 775 F.Supp.2d at 1381. Because the factual and legal issues in this case and *Kallen* are virtually identical, this Court should come to the same conclusion, dismiss Plaintiff's Amended Complaint with prejudice and award sanctions against Plaintiff for La Creperia's fees and costs. In fact, this Court should be more comfortable in dismissing Plaintiff's Amended Complaint and awarding sanctions because Plaintiff's counsel is aware of the *Kallen* decision[8] and continues to file frivolous claims.

---

[8] As discussed throughout this Motion, Mr. Weitz has filed a large number of cases alleging ADA violations in the Southern District where the *Kallen* case was decided and Mr. Kallen is often his client in such cases. It only makes sense that he would be up to date on the current case law, especially case law that expressly provides sanctions for behavior exhibited by Mr. Weitz in the majority of his cases. It is also true that Mr. Weitz has had a long history of litigating ADA mootness defenses, as demonstrated in another case filed by Mr. Weitz on behalf of another client, *Hasday v. Brinker Florida, Inc.*, Case No. 1:04-cv-20737-DLG (S.D. Fla.), in which Mr. Weitz's client continued to pursue ADA claims, including claims for injunctive relief, against a restaurant long after becoming aware that restaurant had permanently closed for business, and in which such issues were extensively briefed by the parties thereto.

The Mootness Correspondence and the Chilias Affidavit outline the particular steps that have been taken by La Creperia to confirm that no ADA violations exist on the premises; therefore, injunctive relief is wholly inappropriate and this case should be dismissed as moot. Specifically, the Mootness Correspondence and Chilias Affidavit show: (1) the door mat at the front entrace to the restaurant has been removed; (2) table service is available immediately adjacent to the allegedly non-complying service counter; (3) an insulating sleeve was installed on the drain pipe underneath the restroom sink; (4) there is no garbage can located under the sink; (5) the toilet flush controls have been moved to the open side of the toilet tank; (6) an additional restroom mirror has been installed; (7) an additional paper towel dispenser has been installed; (8) the toilet paper dispenser is mounted in the proper location; (9) an additional coat hook was installed on the restroom door at a lower height; and (10) multiple directional and handicap accessible signage is posted adjacent to and on the restroom door. La Creperia disputes that any of the aforementioned items warrant an injunction, and each item is specifically discussed in greater detail in Section IV of this Memorandum.

**B.     Plaintiff's Lawsuit is Not Seeking to Remedy ADA Deficiencies**

Plaintiff's tactics in this case look virtually identical to the tactics used in *Rodriguez v. Investco, L.L.C.*, 305 F.Supp.2d 1278 (M.D. Fla. 2004) (court notes that the rash of ADA lawsuits bogging down the court system and tormenting small businesses is motivated by attorneys' fees rather than a sincere effort to fix ADA violations); and *Norkunas v. Seahorse NB, LLC*, 2011 WL 1988799 (M.D. Fla.); *aff'd Norkunas v. Seahorse NB, LLC*, 2011 WL 5041705 (C.A.11 Fla.) (court characterizes serial litigants' ADA suits as games of "cat and mouse" in which claims are deliberately kept vague by

plaintiffs' counsel, hoping for protracted litigation and high attorneys' fee awards).

Fortunately, the jurisprudence in the Eleventh Circuit has to a large degree closed off this

highly lucrative business model by allowing defendants in ADA lawsuits to confine the

scope of the battle to those claims of ADA non-compliance originally raised in the

plaintiffs' complaints and eliminate attorneys' fee awards in plaintiffs' favor where the

defendants correct all ADA deficiencies prior to judgment.

### 1. Plaintiff's Inability to Expand ADA Claims Beyond Barriers He Initially Encountered

Plaintiff has repeatedly threatened in his court filings before this Court to find and

allege additional ADA violations once his expert conducts additional inspections of the

restaurant facility. This is inappropriate under *Macort v. Goodwill Industries-Manasota,*

*Inc.*, 220 F.R.D. 377, 379 (M.D. Fla. 2003) (plaintiff seeking to raise ADA claim on

behalf of all disabled individuals could only raise claims relating to his specific disability

and was denied request to conduct Rule 34 inspection concerning mobility related

barriers which were not described in his complaint); and *Harty v. SRA/Palm Trails Plaza,*

*LLC*, 755 F.Supp.2d 1215, 1217 (S.D. Fla. 2010) (plaintiff allowed to conduct Rule 34

inspection only concerning ADA barriers listed in his complaint). Instead, Dr. Duldulao

is limited to the barriers he personally encountered during his alleged single visit to La

Creperia.

### 2. Repairing ADA Violations Moots Case/Eliminates Plaintiff's Rights to Attorneys' Fees

Further and perhaps more importantly, recent ADA cases have made clear that a

defendant can fix ADA violations following the filing of an ADA complaint and thereby

render the claims moot. A motion to dismiss a case as moot under F. R. Civ. Pro.

12(h)(3) can be made at any time.  *Harrell v. Sumner Contracting Co. v. Peabody Petersen Co.*, 546 F.2d 1227, 1229 (5th Cir. 1977).  Mootness eliminates the ability of the ADA plaintiff to recover attorneys' fees.[9]

In *Norkunas v. Tar Heels Capital Wendy's LLC*, 2011 WL 2940722 (W.D.N.C.), the court held that the defendant's fixing of ADA items during the pendency of the ADA lawsuit without judgment being entered eliminated the plaintiff's right to recover attorneys' fees.  Further, the *Norkunas v. Tar Heels* court held that the plaintiff's request for an injunction to prevent future ADA violations was unwarranted because the nature of the architectural changes carried out by the defendant were permanent in nature and thus it was unlikely that violations concerning these items would occur in the future.  This holding was similar to the holding in *Sharp*, 496 F.Supp.2d at 99, where the court held that no award of attorneys' fees was warranted if: (1) there was no reasonable expectation that the alleged violation would recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violations.

In this regard, the courts have expressly turned away from and rejected earlier court decisions which have concluded that a defendant's remedying of ADA violations after suit has been filed was precipitated by the ADA plaintiff's suit, thus meriting an award of attorneys' fees in the plaintiff's favor.[10]

---

[9] *See e.g., Norkunas v. Seahorse NB, LLC*, 2011 WL 1988799 (M.D. Fla.); *aff'd Norkunas v. Seahorse NB, LLC*, 2011 WL 5041705 (C.A.11 Fla.) (court disallows attorney fee award to ADA plaintiff with respect to claim against hotel because hotel fixed all ADA violations prior to judgment being entered in favor of the plaintiff); *National Alliance For Accessibility, Inc. v. Walgreen Co.*, 2011 WL 5975809 (M.D. Fla. 2011) (drug store's fixing of architectural barriers in midst of lawsuit mooted case, leading to a denial of an award of attorneys' fees to the plaintiff); and *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F.Supp.2d 93, 100 (D.D.C. 2007) (removal of restaurant barriers either prior to or after filing suit mooted case, leading to dismissal of case and denial of award of attorneys' fees to ADA plaintiff).

[10] *See e.g., Buckannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Services Res.*, 532 U.S. 598, 610 (2001) (holding that the catalyst theory is not a permissible basis for the award of attorneys'

La Creperia provided Plaintiff's counsel with photographic evidence containing specific measurements regarding each and every allegation in Plaintiff's Amended Complaint prior to the filing of the Amended Complaint. Despite knowing that any potential ADA violations alleged in the Amended Complaint did not exist or had been remedied, Plaintiff filed the Amended Complaint. Accordingly, this lawsuit can only be viewed as an attempt to receive attorneys' fees. Other courts in the Eleventh Circuit have consistently reprimanded plaintiffs and their counsel for this sort of behavior, and this Court should be no different.

## IV. **Plaintiff's Claims are Not Violations of the ADA, or are Not Specific Enough for La Creperia to Respond**

As noted by this Court in its Order dismissing Plaintiff's original Complaint, Plaintiff utilized very general allegations in his Complaint so that the pleading could be used against multiple defendants with minimal modification. This practice continues in the Amended Complaint. This makes responding to the Amended Complaint extremely difficult, because it is hard to determine the precise ADA violation that has allegedly affected the Plaintiff. Moreover, various alleged violations cited in Plaintiff's Amended Complaint are not, in fact, violations. Section IV of this Memorandum discusses each alleged violation and demonstrates that Plaintiff's Amended Complaint should be dismissed as misstating the ADA requirements or, alternatively, Plaintiff should be required to provide more specific information regarding each alleged violation.

### A. **Failure to Secure a Door Mat**

Plaintiff's first allegation in his Amended Complaint is that the door mat at the entryway to the restaurant is not secured as provided in 28 C.F.R. Part 36, Section 4.5.3.

---

fees under the ADA); and *American Ass'n of People with Disabilities v. Harris*, 605 F.3d 1124, 1137, n. 26 (11th Cir. 2010).

The section cited by Plaintiff addresses carpeting requirements, not mats placed outside or immediately inside of an entry door. Federal courts have held, and the Access Board (comprised of members of the Department of Justice) has confirmed, that door mats are "furnishings" and are not covered by the ADA. *See Wilson v. Pier 1 Imports (US), Inc.*, 439 F.Supp.2d 1054, 1073 (E.D. Cal. 2006). Moreover, stable door mats that are not tripping hazards "may actually improve the accessibility of a surface." *Id.* Plaintiff's counsel has almost certainly known from the outset of this litigation that door mats are not "carpeting" as described in 28 C.F.R. Part 36, Section 4.5.3 because this was pointed out by the court in a case brought by one of his team of ADA plaintiffs, Dorian Kallen, in *Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374, 1380 (S.D. Fla. 2011).[11] Nevertheless, Plaintiff continues to assert this baseless claim in the Amended Complaint. Because the ADA does not recognize a claim for an unsecured door mat, Plaintiff's Amended Complaint should be dismissed with prejudice.

### B.     Service Counter Height

Plaintiff's second allegation is that the service counter at La Creperia's restaurant is higher than 34 inches above the floor in violation of 2004 ADAAG, Chapter 9, Section 902.3. Such section provides as follows:

> "**902.3 Height.** The tops of dining surfaces and work surfaces shall be 28 inches (710 mm) minimum and 34 inches (865 mm) maximum above the finish floor or ground."

In an effort to avoid the clear language of Section 5.2 of the ADA Compliance Guidelines, 28 C.F.R. Part 36, which allows for ADA compliance if adjacent table service is available, Plaintiff is now citing 2004 ADAAG, Chapter 9, which only applies

---

[11] It is noteworthy that Plaintiff's counsel failed to mention this case in responding to La Creperia's two prior Motions addressing this specific alleged ADA non-compliance as well as the service counter height issue described herein.

to new construction or renovations occurring after March 15, 2012. Furthermore, Plaintiff's interpretation of such provision as applying to all dining surfaces, even those located in facilities with table service, would, if accurate, make substantially all establishments with bar areas in America illegal under the ADA.

In this case, and as demonstrated by the Mootness Correspondence, La Creperia offers diners the choice of table service or service at a counter. Plaintiff's allegations do not set forth a claim because there is no allegation that table service is not available immediately adjacent to the allegedly non-compliant counter. Where table service is available throughout the restaurant at wheelchair accessible tables, it matters not whether a serving counter is higher than the maximum dining level height required by the ADA Compliance Guidelines. *Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d at 1379-1380. Because there is no claim for violation of the ADA when both counter and table service are offered, Plaintiff's Amended Complaint should be dismissed with prejudice.

### C.     Insulation of Drain Pipes

Plaintiff's third allegation is that the restroom sink's hot water pipes are not properly insulated to prevent burns and scrapes or are not otherwise configured to protect against contact as provided in 28 C.F.R. Part 36, Section 4.19.4. Plaintiff's third alleged claim of ADA non-compliance fails and should be dismissed for failure to adequately state a claim because there is no allegation as to how the pipes in question were improperly configured (*e.g.*, that the pipes in question stuck out too far in relation to the outward edge of the sink).

### D.     Underside Sink Clearance

Plaintiff's fourth allegation is that the required underside clearance under the

restroom lavatory/sink was not properly provided because a garbage can blocked access. Plaintiff's Amended Complaint now clarifies that he is alleging a violation of 38 C.F.R., Part 36, Section 4.19.2, but such Section relates only to the mounting of the sink and the drainage piping thereunder. The "Frequently Asked Questions" page on the ADAAG website specifically states that "[f]urniture, furnishings and equipment not fixed to building construction are not scoped or specified in *ADAAG* (although the DOJ and DOT rules cover some such items)." Moreover, the 11th Circuit Court of Appeals has conclusively held that "only permanent, physical structures and the fixed items attached to those structures are 'facilities' that may be 'altered'." *American Association of Peoples with Disabilities v. Harris*, 2011 WL 3117872 (11th Cir. 2011).

In this case, Plaintiff is arguing that a movable garbage can (a furnishing), which is not typically located under the restroom sink,[12] is somehow creating a barrier to Plaintiff's use and enjoyment of the La Creperia restaurant. The case law cited above confirms that a movable item that is not permanently attached to the building or structure cannot be the basis of an ADA complaint. Because there is no permanent architectural barrier created by the presence of a movable garbage can in the restroom, Plaintiff's Amended Complaint should be dismissed with prejudice.

### E.    Toilet Flushing Controls

Plaintiff's fifth allegation is that La Creperia has failed to provide accessible restroom toilet flushing controls in accordance with 28 C.F.R. Part 36, Section 4.16.5. As is now apparent from the more specific allegations in the Amended Complaint,

---

[12] The garbage can is not typically located under the restroom sink because patrons would have trouble throwing refuse into the garbage can. The garbage can was likely placed there by another patron or by the Plaintiff himself, and has since been moved to its original location. Photos confirming the clearance underneath the sink were provided via the Mootness Correspondence to Plaintiff prior to the filing of the Amended Complaint.

Plaintiff is complaining that the flushing handle is on the wrong side of the toilet's tank (*i.e.,* the flush handle was not on the "open side" of the toilet/restroom area and was instead positioned on the toilet tank side nearest to the wall).

It is unclear how this presented a barrier to Dr. Duldulao's access and use of the toilet in question as there is no indication from the Amended Complaint that Dr. Duldulao lacks range of motion or was otherwise unable to reach the handle as a result of his disability. In other words, although the handle might have once been on the wrong side of the small toilet tank,[13] there is nothing implicit or explicitly alleged by Dr. Duldulao in the Amended Complaint that he was unable to reach the flush mechanism behind him while seated at the toilet or reach across the short distance of the toilet tank while seated in front of or on the open side of the toilet.

Finally, Plaintiff is not entitled to an injunction for ADA violations which are *de minimus* and do not materially impair the use of an area for its intended purpose or pose any apparent danger to persons with disabilities.[14] In the case of the flushing handle, its reorientation a short distance to the other side of the toilet tank constituted an insubstantial change in the context of Dr. Duldulao, who professes not to suffer any upper body disability.

For the foregoing reasons, the claim of violation relating to the toilet flush handle should be dismissed as not stating a claim with enough particularity, or alternatively should be dismissed with prejudice as *de minimus* in nature.

---

[13] As discussed in Section III of this Memorandum, the flush mechanism has been moved to the "open" side of the toilet shortly after the filing of the Amended Complaint.

[14] *Access Now, Inc. v. South Florida Stadium Corp.*, 161 F.Supp.2d 1357, 1369 (S.D. Fla. 2001) (citing *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1086, n. 26 (D. Haw. 2000), which noted that an injunction would be inappropriate to move a wall mounted item a few inches to become ADA compliant).

### F.        Restroom Mirror

Plaintiff's sixth allegation is that La Creperia has failed to install a restroom mirror in compliance with 28 C.F.R. Part 36, Section 4.19.6.  La Creperia has investigated this allegation and has confirmed that the bottom edge of the mirror in place in April of 2011 was mounted approximately one inch too high from the level specified in the ADA Accessibility Guidelines.[15]  Defendant has since mounted a second mirror at a height well within the ADA Guidelines, as depicted in the Mootness Correspondence. As stated in *Access Now, Inc. v. South Florida Stadium Corp.*, 161 F.Supp.2d 1357, 1369 (S.D. Fla. 2001), this Court should declare that the issue was at all times *de minimus* in nature, and should be dismissed with prejudice.

### G.        Paper Towel Dispenser

Plaintiff's seventh allegation is that La Creperia has failed to provide a paper towel dispenser at an accessible height as required by 28 C.F.R. Part 36, Section 4.22.7. Plaintiff's Complaint conveniently fails to allege the approximate height of the paper towel dispenser located in La Creperia's restroom, and fails to allege that the controls are not within the proper height requirements.[16]  If Plaintiff had to allege this information, there would be no violation of the ADA because the height of the dispenser and its controls meet the provisions of the ADA, specifically, 28 C.F.R. Part 36, Section 4.22.7.

Plaintiff's Complaint should be dismissed with prejudice for failure to allege that the highest operable part of the controls for the paper towel dispenser is in excess of 54

---

[15]  Figure 31 and Section 4.19.6 of the ADA Accessibility Guidelines dictate that the maximum height of the bottom edge of a mirror mounted on a wall is 40 inches.

[16]   Section 4.2.5, 4.2.6, 4.22.7 and 4.27.3 of the ADA Accessibility Guidelines dictate that the minimum/maximum heights of the operable part of the dispenser on the wall is 15 inches/48 inches with respect to a direct wheelchair approach and 9 inches/54 inches with respect to a side wheelchair approach provided there are no wall obstructions jutting out more than 20 inches blocking the individual's reach.

inches.  Alternatively, Plaintiff should be required to provide a more definite statement to determine whether Plaintiff is claiming that the height of the operable controls for the paper towel dispenser must comply with 28 C.F.R. Part 36, Section 4.2.5 or 4.2.6 (*i.e.* 48" or 54").  Plaintiff also does not claim that he was unable because of his disability to reach the paper towel dispenser installed at the restaurant premises when Plaintiff claims to have visited the restaurant.

### H.    Toilet Paper Dispenser

Plaintiff's eighth allegation is that La Creperia has failed to provide a toilet paper dispenser at an accessible reach range as required by 28 C.F.R. Part 36, Section 4.22.7 and figure 29(b), which dictates the proper height of toilet paper dispensers.[17]  Plaintiff's Complaint conveniently fails to allege the approximate height of the toilet paper dispenser located in La Creperia's restroom.  If Plaintiff had actually alleged this information, it would be evident that there was no violation of the ADA because the height of the dispenser, as demonstrated in the photos attached to the Mootness Correspondence, meets the provisions of the ADA, specifically, 28 C.F.R. Part 36, Section 4.22.7 and figure 29(b).

Further, Plaintiff does not claim that he was unable because of his disability to reach the toilet paper dispenser installed at the restaurant premises when Plaintiff claims to have visited the restaurant.  Accordingly, this claim should be dismissed for failure to state a claim or Plaintiff should be required to reallege how the paper towel dispenser more specifically presented a barrier to his use of the restroom.

---

[17] Figure 29 and Section 4.22.7 of the ADA Accessibility Guidelines dictate that the minimum/maximum heights of the operable part of the toilet paper dispenser on the wall is 19 inches/48 inches

### I.       Coat Hook Height

Plaintiff's ninth allegation in the Amended Complaint is that the coat hook on the restroom door is too high, which Plaintiff now claims to be a violation of 28 C.F.R. Part 36, Section 4.2.5.[18]   Plaintiff does not claim that he was unable because of his lower extremity related disability to reach the coat hook in question.   Accordingly, this Court should require that Plaintiff more specifically describe how his alleged disability prevented him from using the coat hook, or declare the issue *de minimus* in nature and dismiss the Amended Complaint with prejudice.

### J.       Directional and Informational Signage

Plaintiff's tenth and final allegation is that La Creperia has failed to provide "any directional and any informational signage throughout the Subject Facility, including at the restroom as required by 28 C.F.R. Part 36, Section 4.1.3(16)."   In the Order dismissing the original Complaint this Court required that Plaintiff explain how the existing signage was non-compliant.   Instead of discussing how the signage was non-compliant and how non-compliant signage would affect an individual who is not blind or mute, Plaintiff adopted the knowingly false position that there are no ADA signs at the restaurant.   Multiple instances of ADA signage are clearly depicted in the photos attached to the Mootness Correspondence.

## V.      Plaintiff Lacks Standing

In this Court's Order dismissing Plaintiff's Complaint, this Court based its decision to dismiss the Complaint in part upon the grounds that Plaintiff, a serial litigant, pled no facts which indicated a reasonable expectation of return to La Creperia.   Courts

---

[18]   Plaintiff formerly claimed that the coat hook was a violation of 28 C.F.R. Part 36, Section 4.1.3(12) and 4.25.3 in his original Complaint.   Section 4.2.5 of the ADA Accessibility Guidelines dictate that the minimum/maximum heights of general fixtures attached to a wall is 15 inches/48 inches.

have repeatedly held that ADA plaintiffs have an obligation to plead, with reasonable particularity, their plans to return to the non-compliant facility in question.[19]

This is particularly true with respect to ADA plaintiffs who are serial litigants, and whose behavior reflects a desire to sue as many allegedly non-ADA compliant establishments as possible rather than cause their favored establishments to come into compliance. Serial litigants in particular are prone to falsely claim a sincere desire to return. Such litigants are required to demonstrate a history of patronizing the establishment in question. *Brother v. Rossmore Tampa Ltd. Partnership*, 2004 WL 3609350 (M.D. Fla. 2004).

In *Brother*, the plaintiff, who had already filed seventy ADA lawsuits, and had sued three different hotels during a brief visit to Tampa, claimed that he intended to return to the defendant hotel in the future, but was unable to plead specific and concrete plans to return to the hotel. The court determined that his professed intent to return lacked credibility because of the number of similar suits filed by the plaintiff, plaintiff's inability to prove that he stayed at the hotel on prior occasions and lack of reservations to stay at the hotel in the future on the date that he filed his lawsuit (any attempt to bolster standing after the filing of a lawsuit would be ineffective).

The same litigant was denied standing to sue a different hotel by another court for the same reason in *Brother v. Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1372-1374 (M.D. Fla. 2004). In *Brother v. Tiger Partner*, the court held that the plaintiff failed to

---

[19] *See e.g., Access For the Disabled, Inc. v. Rosof*, 2005 WL 3556046 (M.D. Fla.) (plaintiff was unlikely to revisit defendant's flooring store despite speculative allegations that he would return someday in the near future – instead, he needed concrete plans to return); *Shotz v. Cates*, 256 F.3d 1077, 1081-1082 (11th Cir. 2001) (ADA plaintiff's one-time visit to courthouse was not adequate to convey ADA standing to seek injunctive relief without evidence that he had frequently visited the courthouse or had concrete plans to return in the future); and *Rodriguez v. Investco, L.L.C.*, 305 F.Supp.2d 1278, 1280, fn. 3 (M.D. Fla. 2004) (plaintiff's testimony that he intended to return to the defendant's hotel determined to be prompted primarily by plaintiff's desire to keep ADA lawsuit alive).

demonstrate an adequate continuing connection to the defendant's hotel facility and that any alleged threat of future injury was speculative at best and not credible. The plaintiff in *Brother v. Tiger Partner* had a heightened standard in pleading his connection to the defendant's facility in light of his multitude of ADA lawsuits. *Brother v. Tiger Partner*, 331 F. Supp. at 1374.

Courts have generally focused on four factors when deciding the likelihood that a plaintiff will return to the defendant's facility and suffer a repeat injury: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plan to return, and (4) the plaintiff's frequency of travel near defendant. *Norkunas v. Seahorse NB, LLC*, 720 F.Supp.2d 1313, 1316 (M.D. Fla. 2010). Nothing in the Amended Complaint suggests that Plaintiff satisfies any of these four factors.

Because Plaintiff lacks standing with regard to these allegations, Plaintiff's Complaint should be dismissed, and as this Court has previously ordered the lawsuit dismissed on these grounds and Plaintiff has been unable to plead this element of his case, the lawsuit should be dismissed with prejudice on these grounds.

WHEREFORE, La Creperia respectfully requests that this Court: (a) enter an order granting La Creperia's Motion to Dismiss without Prejudice based upon the failure by Plaintiff to properly allege ADA violations, (b) in the alternative, enter an order requiring Plaintiff to file a more definite statement with regard to the alleged violations of the ADA such that La Creperia can properly respond to said allegations, (c) in the alternative, enter an order dismissing the Amended Complaint with Prejudice based upon Plaintiff's failure to allege standing, (d) enter an order dismissing the Amended

Complaint with Prejudice based upon the fact that the case is now moot, (e) award Defendant its fees and costs incurred in this matter, and/or (f) grant any further and additional relief that the Court deems just and appropriate.

TAMPA LAW SOURCE, P.A.

/s/ Brian C. Chase
Daniel G. Musca, Esq.
Florida Bar No. 72877
dan@tampabizlaw.com
Brian C. Chase, Esq.
Florida Bar No. 17520
brian@tampabizlaw.com
12004 Race Track Road
Tampa, Florida 33626
Phone: (813) 814-0700
Facsimile: (813) 814-0762
Counsel for Defendant

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Dismiss, Alternative Motion for More Definite Statement, Alternative Motion to Dismiss the Case as Moot and Incorporated Memorandum of Law has been furnished by electronic filing via CM/ECF or United States Mail this 30th day of January, 2012, to the following:

B. Bradley Weitz, Esq.
The Weitz Law Firm, P.A.
Bank of America Building
18305 Biscayne Blvd., Suite 214
Miami, Florida 33160
Tel: (305) 949-7777
Fax: (305) 704-3877

/s/ Brian C. Chase
Attorney